# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4952-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SERKAN M. SEYREK,

    Defendant-Appellant.

_____

> Submitted September 16, 2020 – Decided October 15, 2020
>
> Before Judges Whipple and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Accusation No. 13-11-1533.
>
> Galantucci & Patuto, Esqs., attorneys for appellant (David J. Altieri, on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Serkan M. Seyrek appeals the trial court's June 4, 2019, denial

of his petition for post-conviction relief (PCR) after an evidentiary hearing. We affirm. Defendant raises the following issue on appeal:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S [PCR] PETITION BECAUSE TRIAL COUNSEL FAILED TO PERFORM AS GUARANTEED BY THE SIXTH AMENDMENT, WHICH PRECLUDED MR. SEYREK FROM ENTERING HIS GUILTY PLEA KNOWINGLY AND VOLUNTARILY.

We discern the following facts from the record. On February 22, 2012, defendant left a party at a college where he had been drinking. After being dropped off at home, defendant took a knife from his kitchen and went back outside. A few hours later, defendant entered a home by climbing onto a second-floor deck and opening the unlocked door. Once inside, defendant sexually assaulted two children before being caught in the act by their mother. Defendant fled the home, leaving behind fingerprints, shoeprints, a piece of jewelry containing the letters "SERV-N," blood, and other forms of DNA evidence.

Approximately six months later, defendant was arrested for an unrelated burglary. While being questioned, defendant asked whether the sexual assault case, which had been publicized throughout the neighborhood, had been solved. One of the detectives thought defendant matched the description of the sexual assault suspect; defendant then became a person of interest. Defendant returned

2

to the police station to discuss that assault with the police on September 6, 2012. In the initial sexual assault interrogation, defendant waived his Miranda[1] rights both verbally and on a Miranda form provided by the police. Following some initial questioning, defendant invoked his right to counsel. Upon confirming that defendant did indeed wish to consult with an attorney, the officers ended the interrogation.

A half-hour later, defendant reinitiated the discussion about the case after being informed that officers intended to seek a court order to collect DNA samples from him. The officers then returned to the interrogation room, where they asked defendant to confirm his request for counsel had been honored and that defendant was voluntarily reinitiating proceedings. Officers orally re-read defendant his Miranda rights, which he subsequently waived. Defendant confessed to the sexual assault and voluntarily agreed to provide DNA samples to the police.

Defendant was charged with eight counts of first-degree aggravated sexual assault of a victim less than thirteen years old, N.J.S.A. 2C:14-2(a)(1), and one count of second-degree burglary, N.J.S.A. 2C:18-2. On November 21, 2013, defendant pled guilty to four counts of first-degree aggravated sexual

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-4952-18T4

assault of a victim less than thirteen years old, and one count of burglary. On March 7, 2014, defendant was sentenced to an aggregate twenty-eight years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; Megan's Law, N.J.S.A. 2C:7-1 to -11; and Parole Supervision for Life, N.J.S.A. 2C:43-6.4. Defendant filed a PCR petition in July 2018, asserting that his counsel was ineffective for failing to move to suppress his statements to police after invoking his right to counsel; for failing to advise him he could pursue a diminished capacity defense or challenge physical evidence such as DNA and fingerprints; and for failing to advise him of the breadth of his plea or of the consequent limitations on his parole eligibility. The court granted an evidentiary hearing that was held in May 2019, on the issue of defendant's discussions with his counsel regarding his plea.

During the hearing, defendant's trial attorney testified she went over defendant's plea agreement with him in detail, including all five counts as well as the NERA and civil commitment implications. Regarding the failure to file motions to suppress the testimonial and physical evidence, the trial attorney stated she had discussed these motions with defendant, and that he had decided not to pursue those options. The trial attorney also claimed that similar considerations were made regarding defendant's possible use of a diminished

capacity defense, with the defendant deciding the plea was more advantageous. Furthermore, defendant's trial attorney indicated that she did not file a motion to suppress as she believed it was improper to file such a motion pre-indictment. Finally, defendant's trial attorney testified that defendant expressed an uninterrupted desire to plea which was maintained throughout the various discussions they had regarding the contents of his plea and the strength of his possible defense.

On June 4, 2019, the PCR court denied defendant's PCR petition. It found that even if the trial attorney had filed a successful suppression motion under Miranda, the State still had enough physical evidence to reliably obtain a conviction. It found no merit to defendant's assertion that his counsel was ineffective for not raising an intoxication defense. The court found plea counsel credible and defendant to have been fully informed of all aspects of his plea agreement. This appeal followed.

Claims of ineffective assistance of counsel are governed by the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). See State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland standard in New Jersey). For a defendant to establish a prima facie case of ineffective assistance of counsel under Strickland, the defendant must show that defense "counsel's performance

5

was deficient," and that "there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Preciose, 129 N.J. 451, 463-64 (1992) (quoting Strickland, 466 U.S. at 694); see also State v. Allegro, 193 N.J. 352, 366 (2008).

"The first prong of the [Strickland] test is satisfied by a showing that counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." Allegro, 193 N.J. at 366 (quoting State v. Castagna, 187 N.J. 293, 314 (2006)). To satisfy the second prong of Strickland, a defendant must prove "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 367 (quoting State v. Loftin, 191 N.J. 172, 198 (2007)). The second prong is "an exacting standard: '[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached.'" Ibid. (quoting Castagna, 187 N.J. at 315). Applying this standard, we reject defendant's arguments.

Where there has been an evidentiary hearing, we review a PCR petition with deference to the trial court's factual findings. State v. Nash, 212 N.J. 518, 540 (2013) (citations omitted).

Defendant asserts that his trial counsel was ineffective because she (1)

A-4952-18T4

failed to properly file motions to suppress his testimonial and physical evidence; (2) failed to properly inform him of his potential intoxication defense; and (3) failed to properly inform him of the contents and consequences of his plea agreement. Arguments two and three constitute challenges to the trial court's sufficient credible factual findings. The court found that defendant and his attorney discussed the possibility of pursuing a diminished capacity defense. Those findings "could reasonably have been reached on sufficient credible evidence present in the [testimony]." See State v. Locurto, 157 N.J. 463, 471 (1999).

As for the third argument, defendant contends that a failure to understand the full contents of one's plea as well as the full legal exposure one faces would satisfy the Strickland test. The court found that during meetings with his trial counsel, defendant was properly informed about the contents of his plea and his maximum exposure, a finding that was also based on the sufficiently credible testimony of defendant's trial attorney.

When the trial judge addressed the remaining issue, trial counsel's failure to move to suppress the testimonial and physical evidence, the trial judge was unable to view one of the two videos of defendant's interrogation and accordingly conducted the Strickland test under the assumption that the initial

7

prong had been satisfied. In particular, the judge was unable to open the video of the initial interrogation, which contained defendant's invocation of his right to counsel. The occurrence of this invocation of Sixth Amendment rights is uncontested by both parties. However, due to this discrepancy, the judge chose to presume the first prong of the <u>Strickland</u> test had been satisfied and focused his analysis on the second prong. Based on the available evidence, the judge did express that he believed no <u>Miranda</u> violation had occurred.

Defendant argues the judge erred in finding that the failure to file a <u>Miranda</u> motion had no substantive effect on the outcome of the case. He asserts that the court's reliance on physical evidence was inappropriate because that evidence was obtained as a direct result of his testimony and, therefore, it should have also been suppressed as "fruit of the poisonous tree."

Even if we presume for purposes of this discussion that defendant's statements were subject to suppression, we do not agree the outcome would have been different. The physical evidence of DNA, blood, fingerprints, and the jewelry would have been admissible under the inevitability doctrine. <u>State v. Johnson</u>, 120 N.J. 263, 290 (1990). In <u>Johnson</u>, the defendant was arrested for killing two people after police were approached by the defendant's friend, to whom the defendant had confessed. <u>Id.</u> at 269-70. Following the arrest, Johnson

8

was interrogated for multiple hours wherein he repeatedly stated, "I can't talk about it," before eventually confessing. Id. at 275, 284. Our Supreme Court interpreted this statement to be an assertion of his right to remain silent and saw the police's actions as coercive. See id. at 285-86. This coerced confession tainted the testimonial evidence as well as the murder weapon that was found as a result of the questioning. Id. at 287-88. However, the court in Johnson held the physical evidence was still admissible because the state established by clear and convincing evidence that (1) the detective had begun preparing a search warrant prior to the coercion; (2) the application would have been granted; and (3) the investigators would have inevitably searched Johnson's home and found the contested physical evidence. Id. at 289-90.

Here, there is no support that the physical evidence would have been suppressed as fruits of the defendant's alleged unconstitutionally obtained statements. The State would have obtained the physical evidence even without the contested statements. Police had already collected defendant's fingerprints after his burglary arrest, and they possessed defendant's statements recorded in the initial interrogation which made him a suspect prior to his confession. Defendant's fingerprint matched a print found at the scene of the crime, providing police with enough evidence to request and likely obtain a court order

for the buccal swab. See Johnson, 120 N.J. 263 at 290-91. The police stated at the start of the reinitiated interrogation that they had already expressed an intention to file for a court order regardless of defendant's decision to continue talking about the case. See Id. at 289-90. This indication that police were continuing to pursue defendant as a suspect even before he made the contested statements, and the likelihood that they would have inevitably obtained the physical evidence by seeking a court order, satisfies the inevitability doctrine.

Moreover, to satisfy the second prong of the Strickland test, defendant also needs to establish that but for his counsel's errors, there is a reasonable probability that he would have rejected a plea and gone to trial. Lee v. United States, 582 U.S. ___, 137 S. Ct. 1958, 1969 (2017) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Here, defendant fails to provide any evidence that, but for the suppression of his testimony, defendant would have rejected the plea and gone to trial. Defendant's assertion that the suppression of the testimony would have given him increased leverage to negotiate a more favorable plea is not sufficient to satisfy Strickland's second prong. See Hill, 474 U.S. at 58-59. Overall, defendant has not provided persuasive legal arguments as to why the physical evidence should be suppressed, or that he would have insisted on going to trial

A-4952-18T4

even without this suppression.  Without the ability meet the second prong of the Strickland test, this court concludes the trial judge correctly denied defendant's PCR petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4952-18T4